UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                )
ROBERT R. COTE,                 )
                                )
        Plaintiff,              )
                                )
    v.                          )    C.A. No. 23-346 WES
                                )
DONNA TRAVIS, et al.,           )
                                )
        Defendants.             )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Senior District Judge.

Plaintiff Robert R. Cote sues Defendants for removing him from a Warwick City Council meeting, claiming the removal violated his First Amendment rights and constituted a false arrest. See generally Am. Compl., Dkt. No. 29. Before the Court are Defendants' Motion for Summary Judgment ("Defendants' Motion"), Dkt. No. 35, and Plaintiff's Conditional Rule 56(d) Motion ("Plaintiff's Discovery Motion"), Dkt. No. 42. For the reasons explained below, the Court DENIES Plaintiff's Discovery Motion and GRANTS IN PART and DENIES IN PART Defendants' Motion.

## I. BACKGROUND

### A. Warwick City Council: An Overview

"The legislative powers of the city" of Warwick are vested in one City Council. Warwick, R.I., City Charter art. II, § 2-1. The City Council consists of nine elected members, who in turn

elect one of its members to serve as President and another of its members to serve as President pro-tem.  Id. §§ 2-1, 2-5.  The President presides over all City Council meetings.  Id. § 2-5. The President pro-tem acts as President in the President's temporary absence.  Id.

"The council by resolution shall determine its own rules and order of business . . . ."  Id. § 2-6.  These rules govern the conduct of City Council meetings.  Defs.' Statement Undisputed Facts ("DSUF") ¶ 2, Dkt. No. 37.  Two of these rules are relevant to this litigation.[1]  First, Rule 1 provides that, during City Council meetings, "[t]he President shall preserve decorum and order, and shall decide all questions and points of order subject to an appeal to the City Council by any one member."  Id. Ex. A, at 1.  Under Rule 1, if an appeal is made, then the President's "decision may be overturned by a majority of the members present." Id.  Second, Rule 41 directs that:

> [A]t each City Council Public Hearing meeting, there shall be a fifteen (15) minute period during which citizens may comment about Warwick City Government issues subject to the following stipulations:
>
> > a. The total period of time for public comment shall be fifteen (15) minutes.  Comments need to be brief in order to allow as many citizens as possible to participate.
> > b. The topics for comment shall be issues directly affecting City government.

---

[1] The Court recites the rules as they were in effect as of July 17, 2023, the day of the events in issue in this litigation. See DSUF ¶ 1.

2

      c. City Council members will not respond to questions during the public comment period.

      d. The public comment session will terminate at the expiration of fifteen (15) minutes. Waiver of this provision requires a unanimous vote of the Council.

Id. Ex. A, at 18.

**B. Factual History**

Plaintiff Robert R. Cote is a U.S. citizen and Warwick resident. Pl.'s Statement Additional Undisputed Facts ("PSAUF") ¶ 14, Dkt. No. 41. He "frequently comment[s] on matters of public concern and the Providence Journal has on several occasions described him as a 'watchdog.'" Id. ¶ 22. One former City Councilmember, Defendant Donna Travis, has independently described him as being "always on the hunt." Id. ¶ 36.

In July 2023, Cote caught the scent of a brewing potential scandal: he read a newly published piece in the Providence Journal that he believed "related to Travis'[s] ethics as a member of the City Council." See id. ¶¶ 23-26. July 17 was the next scheduled City Council public hearing meeting, so Cote signed up to speak during the meeting's public comment period. DSUF ¶¶ 1, 6.

At the July 17 meeting, as things turned out, City Council President Defendant Stephen McAllister was absent; presiding over the meeting, in her capacity as President pro-tem, was Travis. DSUF ¶¶ 7-8. The other seven Councilmembers, also named as Defendants in this action (collectively, the "Present

Councilmembers"), were present.  Id. ¶ 9.  When Cote's time came

to speak, this exchange occurred:

> Cote: Good evening.  Just a little bit about some local
> politics and I have some official City documents to
> share.  Um, first, I'd like to congratulate Councilwoman
> Travis for another front page of the Providence Journal
> (holding up newspaper).
>
> Travis: You will be talking about City government or
> you'll be leaving.
>
> Cote: This is about the government . . .
>
> Travis: Stick to the topic of City government or else
> you'll be escorted out.
>
> Cote: This is about City government it's actually
> mentioned about the Warwick . . .
>
> Travis: Did you hear what I just said?
>
> Cote: Ok.
>
> Travis: I don't care, any one of the Council people, you
> do not take attack to.  Stick to a City government issue
> and then we'll go forward.
>
> Cote: This is about City government issues we have an
> elected official . . .
>
> Travis: Ok.  Somebody want to take him out?
>
> Cote: You know this is gonna be with the ACLU.
>
> Travis: He's all done.
>
> Cote: This is about . . .
>
> Travis: You get away with it every month, you're not
> gonna do it with me.  You're leaving now.  I'm sure he
> can read, go.  Go.  Goodbye.

City of Warwick, Warwick City Council Meeting – 7.17.2023, at 2:18-

2:20      (YouTube,      July      17,      2023),

https://www.youtube.com/watch?v=PUPaSHtA6Ac&t=8405s.

Law enforcement then escorted Cote out of the meeting.  PSAUF ¶ 30.  None of the Present Councilmembers appealed Travis's decision to eject Cote.  Id. ¶ 33.

Three days later, the Warwick Beacon published an article about the July 17 meeting.  Id. ¶ 35.  The article quoted Travis as saying that "it was the unwritten practice of the City Council not to allow 'personal attacks' during the public comment period." Id.  "Travis also said that she has 'dealt with Cote in the past,'" and "described how he had made a flier with her picture on it and put it on windshields in a Stop & Shop parking lot 'to expose her taxes which included a temporary payment plan.'"  Id. ¶ 36. Finally, "[t]he article adds that Travis also said, '[Cote's] been doing this forever . . . [.] Every time he comes, he has to complain about something.  He's said bad things about the mayor, council people[,] and me.'"  Id.

On August 29, McAllister sent Cote (via Cote's attorney) a letter, personally inviting him "to 'appear before the Warwick City Council at its next meeting . . . to speak about matters he intended to address on July 17, 2023.'"  DSUF ¶ 11 (quoting id., Ex. B).  McAllister also made clear that Cote was welcome "'to participate in future opportunities available to members of the public to address the Council and its Committees, including Rule 41 Public Comment.'"  Id. (quoting id., Ex. B).  Cote has since

addressed the City Council during public comment periods on numerous occasions, each time without interruption. Id. ¶ 13.

**C. Procedural History**

On August 28, 2023, Cote commenced this lawsuit. See generally Compl., Dkt. No. 1. His Amended Complaint names the following parties as Defendants:

- Donna Travis, in both her personal and official capacities;

- The seven Present Councilmembers - William Foley, Vincent Gebhart, Timothy Howe, Edgar Ladouceur, James McElroy, Jeremy Rix, and Anthony Sinapi - in both their personal and official capacities;

- Stephen McAllister, in his official capacity;

- Peder Shaefer, in his official capacity as Finance Director of the City of Warwick; and

- The City of Warwick.

Am. Compl. ¶¶ 5-8. The Amended Complaint makes the following claims and requests for relief:

- Count I alleges all Defendants violated Cote's First Amendment right of free speech. Cote seeks injunctive relief against all Defendants, and compensatory and punitive damages against all Defendants except McAllister.

- Count II alleges all Defendants violated Cote's First Amendment right to petition the government for redress of wrongs. Cote seeks injunctive relief against all Defendants, compensatory damages against all Defendants except McAllister, and punitive damages against Travis.

- Count III alleges Travis retaliated against him for protected First Amendment activity. Cote seeks compensatory and punitive damages.

- Count IV alleges all Defendants subjected him to a false

6

arrest.   Cote seeks compensatory damages against all Defendants except McAllister, and punitive damages against Travis.

Am. Compl. ¶¶ 31-57.

Defendants move for summary judgment.  See generally Defs.' Mot.  Cote opposes Defendants' Motion and moves to defer a ruling on it until he has an opportunity to take discovery.  See generally Pl.'s Resp. Defs.' Mot. ("Pl.'s Resp."), Dkt. No. 39; Pl.'s Discovery Mot.

## II. LEGAL STANDARD

The Court must grant summary judgment to Defendants if they show "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] dispute is genuine when the evidence is such 'that a reasonable jury could resolve the point in favor of the nonmoving party.'"  Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)).  A fact is material when it has "the 'potential to affect the outcome of the suit under the applicable law.'"  Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)).

The Court must view "'the entire record in the light most hospitable to the [nonmoving party],'" drawing "'all reasonable inferences in that party's favor.'"  Id. (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).  But it shall

not rely on "'conclusory allegations, improbable inferences, [or] unsupported speculation.'" Id. (alteration in original) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

Finally, the nonmoving party may show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In that circumstance, the Court "may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Id.

## III. DISCUSSION

Applying these standards to the applicable law and facts, the Court concludes that: (1) Travis is entitled to summary judgment on Counts I-III in her personal capacity, but not in her official capacity; (2) the Present Councilmembers are entitled to summary judgment on Counts I and II in their personal capacities, but not their official capacities; (3) the City is not entitled to summary judgment on Count I or Count II; (4) McAllister, sued solely in his official capacity, is not entitled to summary judgment on Count I or Count II; and (5) all Defendants are entitled to summary judgment on Count IV.

### A. Counts I-III: Section 1983 Claims

The Court begins with Defendants' Motion, specifically its challenges to Cote's Section 1983 claims stated in Counts I-III.

8

But before adjudicating those challenges, the Court reviews the legal principles governing Section 1983 lawsuits.

Under 42 U.S.C. § 1983, a plaintiff may hold civilly liable any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects [him], or causes [him] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To succeed on a Section 1983 claim, a plaintiff must show "'(1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated [his] constitutional or federal statutory rights.'" Wadsworth v. Nguyen, 129 F.4th 38, 50 (1st Cir. 2025) (quoting Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016)).

"[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). To recover on a Section 1983 claim against such a "person," a plaintiff must prove that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. Alternatively, a plaintiff can succeed by showing that the alleged unconstitutional action resulted from "governmental 'custom' even though such a custom has not received formal approval through the body's official

9

decisionmaking channels." <u>Id.</u> at 691.

The Section 1983 claims in this lawsuit assert violations of the First Amendment, which "protects (among other things) the right to free speech and the right to petition all branches of the government." <u>Najas Realty, LLC v. Seekonk Water Dist.</u>, 821 F.3d 134, 141 (1st Cir. 2016) (citing <u>Powell v. Alexander</u>, 391 F.3d 1, 16 (1st Cir. 2004)). And "[w]hen a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim pursuant to § 1983." <u>Id.</u> (citing <u>Powell</u>, 391 F.3d at 16).

Bearing these principles in mind, the Court considers whether any Defendant is entitled to summary judgment.

**1. Travis**

Cote seeks to hold Travis liable for the claims stated in Counts I-III. Am. Compl. ¶¶ 31-50. In defense, Travis says that she is immune to liability under the formidable shields of both absolute legislative immunity and qualified immunity. Defs.' Mem. L. Supp. Mot. ("Defs.' Mem.") 7-13, Dkt. No. 36; Defs.' Supp. Mem. Supp. Mot. ("Defs.' Suppl. Mem.") 3-14, Dkt. No. 51. The Court agrees that she is protected by legislative immunity.[2]

---

[2] Absolute immunity – like qualified immunity – applies to Travis solely in her personal capacity. <u>See</u> <u>Bd. of Comm'rs, Wabaunsee Cnty. v. Umbehr</u>, 518 U.S. 668, 677 n.* (1996) (noting that legislative immunity "under § 1983 extends to public servants only in their <u>individual</u> capacities").

The Supreme Court, relying on federal common law, has held that "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998). This immunity "is an analogue to the Speech and Debate Clause of the federal Constitution that reflects the importance that Anglo-American law traditionally has placed on protecting 'legislators acting within their traditional sphere' from being subject to suit." Cushing v. Packard, 30 F.4th 27, 36 (1st Cir. 2022) (citing Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). But critically, this shield protects only those "actions taken 'in the sphere of legitimate legislative activity.'" Bogan, 523 U.S. at 54 (quoting Tenney, 341 U.S. at 376).

Legitimate legislative activity consists of acts that are "integral steps in the legislative process." Id. at 55.[3] This

---

[3] The parties, in their briefings, utilize a test designed to determine "whether an act is legislative or administrative in nature." Defs.' Mem. 8; see also Pl.'s Resp. 10. But that test is designed for cases where "the legislative immunity analysis centers on function." Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 631 n.9 (1st Cir. 1995). Here, like in Harwood, the Court is instead "dealing with a procedural rule adopted by [the City Council] as a whole for the management of its own business." Id. "Hence, we are not concerned with whether the adoption of the rule comprises a legislative act . . . but, rather, with whether that act is more than 'casually or incidentally related' to core legislative functions." Id. (quoting United States v. Brewster, 408 U.S. 501, 528 (1972)).

contrasts with those "activities that are merely 'casually or incidentally related to legislative affairs.'" <u>Cushing</u>, 30 F.4th at 49 (quoting <u>United States v. Brewster</u>, 408 U.S. 501, 528 (1972)). Examples of legitimate legislative activity include "not only speech and debate per se, but also voting, circulation of information to other legislators, participation in the work of legislative committees, and a host of kindred activities." <u>Nat'l Ass'n of Soc. Workers v. Harwood</u>, 69 F.3d 622, 630 (1st Cir. 1995) (citations omitted) (collecting cases). And the First Circuit has held that "[a]s a rule, a legislature's regulation of the atmosphere in which it conducts its core legislative activities – debating, voting, passing legislation, and the like – is part and parcel of the legislative process, and, hence, not subject to a judicial veto." <u>Id.</u> at 635 (citing <u>Eastland v. U.S. Servicemen's Fund</u>, 421 U.S. 491, 509 (1975)). On the flip side, examples of activities that are only casually or incidentally related to legislative affairs include "disseminat[ing] press releases to the public" and "activities that are more political than legislative in nature," such as "'legitimate "errands" performed for constituents, the making of appointments with Government agencies, [and] assistance in securing Government contracts.'" <u>Id.</u> at 630-31 (first citing <u>Hutchinson v. Proxmire</u>, 443 U.S. 111, 133 (1979); and then quoting <u>Brewster</u>, 408 U.S. at 512).

Against this backdrop, the core question at hand stands in

stark relief: Was Travis's act of interpreting and enforcing Rule 1, by ejecting Cote from the Rule 41 public comment period, within the sphere of legitimate legislative activity?

Neither the Supreme Court nor the First Circuit has decided whether interpreting and enforcing a rule to moderate a legislative session's public comment period constitutes a legitimate legislative activity.  In Hansen v. Bennett, the Seventh Circuit decided that it does not.  948 F.2d 397, 401 (7th Cir. 1991).  As the Hansen court noted, granting absolute immunity to the legislator in this context risks immunizing "an activity which is not 'a part of the legislative process itself.'"  Id. (quoting Brewster, 408 U.S. at 528).  But that approach opts for an altogether different risk: failing to apply a privilege "'deemed so essential for representatives of the people that it was written into the Articles of Confederation and later into the Constitution['s]' Speech and Debate Clause."  Cushing, 30 F.4th at 36 (alteration in original) (quoting Tenney, 341 U.S. at 372).  Indeed, "the [Supreme] Court has further explained that this 'privilege' from suit is 'indispensabl[e]' to 'enable and encourage a representative of the public to discharge his public trust with firmness and success.'"  Id. (second alteration in original) (quoting Tenney, 341 U.S. at 373).

Facing this difficult question, the Court believes that both precedent and prudence favor the conclusion that Travis's action

under Rule 1 was within the sphere of legitimate legislative activity.  As an initial matter, the law of the First Circuit holds that if "a legislative body adopts a rule, not invidiously discriminatory on its face, that bears upon its conduct of frankly legislative business," then "the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as part of their official duties."  Harwood, 69 F.3d at 631 (citation omitted) (collecting cases).  There is no question that the City Council adopted Rule 1; that it is not invidiously discriminatory on its face; and that Travis interpreted and enforced it as part of her official duties as President pro-tem.  There is also no question that Rule 1, if enforced during other portions of a City Council meeting, bears upon legitimate legislative business.  The only question, then, is whether action taken under Rule 1 during the Rule 41 public comment period also relates to genuine legislative business.  The Court believes that it does.

A public comment period is bona fide legislative business, and not simply casually or incidentally related to legislative affairs.  In the words of a sister court, "[a] city council is acting in its legislative capacity when it exercises its investigatory power by presiding over a public comment period."  Timmon v. Wood, 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008) (granting legislative immunity for legislator's actions taken to

moderate city council meeting public comment period); see also Murray v. City of New Buffalo, 708 F. Supp. 3d 1313, 1337-38 (W.D. Mich. 2023) (finding that absolute immunity protected mayor who ejected plaintiffs from the public comment periods of multiple city council meetings).  "'A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" Timmon, 633 F. Supp. 2d at 460 (quoting McGrain v. Daugherty, 273 U.S. 135, 175 (1927)).  Rule 41 public comment periods – which restrict speech to issues directly affecting City government - are inherently designed to collect such information and are thus an "integral step[] in the legislative process." Bogan, 523 U.S. at 55.  And the act of interpreting and enforcing Rule 1 no doubt "regulat[es] the legislative environment" in which this vital legislative business occurs.  Harwood, 69 F.3d at 633.

Prudential considerations are equally compelling.  As one judge of the Fourth Circuit has put it,

> [e]very presiding official in a public meeting must, at some time, make a spontaneous judgment as to whether a speaker is abusing the forum.  Section 1983 was not intended to make actionable isolated incidents in which politicians show poor judgment at a public meeting in calling someone out of order.

Collinson v. Gott, 895 F.2d 994, 1005 (4th Cir. 1990) (Wilkinson, J., concurring) (arguing that absolute immunity applies to a presiding officer of a public meeting).  Travis's (and normally,

the City Council President's) duty to enforce Rule 1 during the Rule 41 public comment period is essential to maintaining an orderly and effective proceeding. "The flow of information through that [period] could be severely jeopardized if every public meeting carried with it the threat of civil liability, not to mention punitive damages." Id. at 1008 (Wilkinson, J., concurring).

Resisting this conclusion, Cote makes three counterarguments. None is persuasive.

First, Cote argues that precedent supports his position that a public comment period is not legitimate legislative activity, marshaling an array of cases from several federal district courts and courts of appeals. Pl.'s Resp. 8-13. Some of these cases are somewhat analogous to this case. Others, less so. Cote also spends much time distinguishing this case from cases that Travis cites. Id. at 13-17. The flaw in his approach lies in the fact that none of the cases he or Travis references is binding authority on this Court, for this set of facts. The Court considers each of those cases for their persuasive value.

Second, Cote contends that the facts show the public comment period at issue here was not legislative in nature because Defendants "were not promulgating an ordinance or passing a budget or even discussing those matters. Rather, they were listening to members of the public comment on matters directly affecting City government, as required by Council Rule 41." Id. at 12. The Court

16

disagrees with this premise, siding with courts that have held that the City Council exercises its investigatory power when it takes public comment on matters directly affecting City government under Rule 41.

Finally, Cote urges the Court to consider Travis's (potentially malign) motive when determining whether her action in interpreting and enforcing Rule 1 was legislative in nature. Id. at 36-37.   He points to evidence in the record to show her "hostility against him." Id. at 37.   But this argument also falls short, because "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan, 523 U.S. at 54.   This inquiry is "stripped of all considerations of intent and motive." Id. at 55.   Indeed, in confirming this principle, the Court in Bogan explained that "it simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" Id. (quoting Tenney, 341 U.S. at 377).   For that reason, the Court in Tenney "held that the defendant . . . had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order 'to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights.'" Id. (quoting Tenney, 341 U.S. at 371).

*   *   *

The bottom line is this: Travis's act of interpreting and

17

enforcing Rule 1 against Cote was "taken 'in the sphere of legitimate legislative activity.'" Bogan, 523 U.S. at 54 (quoting Tenney, 341 U.S. at 376). So she is protected by absolute legislative immunity, and thus entitled to summary judgment in her personal capacity on Counts I-III.

Travis's act indeed may have violated Cote's constitutional rights, may have evinced poor judgment, and may even have been done in service of an inappropriate motive or intent. But legislative immunity "is not forfeited simply because the activities, if unprotected, might violate a plaintiff's constitutional rights." Harwood, 69 F.3d at 634. Nor is it lost due to an improper motive, for "there can be no inquiry into legislative motive no matter how corrupt, for purposes of § 1983 damages liability, so long as the [legislator] is acting in traditional legislative areas." Torres Rivera v. Calderon Serra, 412 F.3d 205, 214 (1st Cir. 2005) (citing Tenney, 341 U.S. at 377). Ultimately, "[i]f [Travis] overstepped the boundary of sound judgment, [s]he should be called to account, not under § 1983, but at the ballot box." Collinson, 895 F.2d at 1006 (Wilkinson, J., concurring).[4]

---

[4] It appears that Travis was, in fact, called to account for her alleged actions. See PSAUF ¶¶ 38, 43-44 (describing how Travis decided to not seek reelection and "agreed to plead nolo contendere to a misdemeanor charge respecting" the issue about which Cote sought to raise at the July 17, 2023, City Council meeting).

### 2. The Present Councilmembers

Cote also seeks to hold the Present Councilmembers liable for Counts I and II.  These Defendants raise two defenses.  They adamantly assert that they "had no legal duty to prevent Councilwoman Travis from potentially violating [Cote's] constitutional rights."  Defs.' Mem. 13.  And they reluctantly argue that, even if they had a legal duty to intervene, they are protected by qualified immunity.  Defs.' Suppl. Mem. 2 n.1.

But the Court, having found that absolute legislative immunity applies to Travis, cannot avoid the inevitable result that it also applies to the Present Councilmembers.  Cote's argument regarding their liability is, at bottom, no different than it is for Travis's liability: an unlawful application of Rule 1.  See Pl.'s Resp. 17-20 (noting that the Present Councilmembers failed, under their Rule 1 authority, to raise an appeal or "point of order").  So the same analysis pertains.  And although these Defendants do not argue for legislative immunity, even Cote appears to realize that if it applies to Travis, then it applies to the Present Councilmembers.  See id. at 1, 8-17 (arguing that none of these Defendants are entitled to legislative immunity).  Thus, because the Court found Travis to be protected by legislative immunity, so too are the Present Councilmembers.[5]  The Present

---

[5] The privilege of absolute legislative immunity applies to the Present Councilmembers solely in their individual capacities.

Councilmembers are therefore entitled to summary judgment in their personal capacities on Counts I and II.[6]

### 3. **The City of Warwick**

Cote also seeks to hold the City liable for the claims set out in Counts I and II, which require him to show that (1) an official City policy or custom (2) caused him to be deprived of his First Amendment protected right.  Am. Compl. ¶¶ 31-46; see also Wadsworth, 129 F.4th at 66.  The City argues that the undisputed facts "do not establish a deprivation of rights by means of policy or custom and, consequently, [Cote's] First Amendment claims . . . must fail."  Defs.' Mem. 16.  The Court disagrees.

The Supreme Court has found that a policy or custom, "duly promulgated by city lawmakers, [can] trigger municipal liability if the decision itself [was] found to be unconstitutional."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 406 (1997).  But a municipal policy or custom need not itself be

_____

See Umbehr, 518 U.S. at 677 n.*.

[6] Had the Court not granted these Defendants absolute legislative immunity, it is likely that it would have rejected their argument that they had no legal duty to prevent the alleged violation of Cote's First Amendment rights.  See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 16 (1st Cir. 2010) (explaining that individual defendants may be liable under Section 1983 "if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization'" (quoting Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010))).

unconstitutional to be "actionable" under Section 1983, if it is unconstitutionally applied.  City of Canton v. Harris, 489 U.S. 378, 387 (1989).  And the Court has further held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986) (emphasis added).  Indeed, even "a final decisionmaker's [one-time] adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983."  Brown, 520 U.S. at 406 (quoting Pembaur, 475 U.S. at 481).

Under these principles, the City's argument does not pass muster at this stage.  For one thing, at the City Council meeting in-issue, Travis (as President pro-tem) unquestionably acted as the City's final decisionmaker with respect to the enforcement of Rule 1.  Under Harris and Pembaur, if that application of Rule 1 was unconstitutional, then that single act could subject the City to liability.  See Harris, 489 U.S. at 387; Pembaur, 475 U.S. at 480.  Moreover, Cote draws on several undisputed facts to infer that the City Council has "an unwritten practice . . . of excluding certain persons who criticize[] [Councilmembers] during the public comment period."  Pl.'s Resp. 21.  If that inference is true, the City could face liability on that basis too.  Accordingly, the City is not entitled to summary judgment on Counts I and II.

### 4. McAllister

Cote further contends that McAllister is liable for the claims asserted in Counts I and II.  McAllister argues that he is not liable because he was not present at the July 17, 2023 City Council meeting. Defs.' Mem. 19-20.  But Cote sues McAllister exclusively in his official capacity as City Council President, and he may do so to obtain equitable prospective relief.  See Reed v. Goertz, 598 U.S. 230, 234 (2023) (citing Ex Parte Young, 209 U.S. 123, 159-61 (1908)).  For this reason, McAllister is not entitled to summary judgment on Counts I and II.

### C. Count IV: False Arrest Claim

Finally, Cote brings a claim against all Defendants for false arrest.[7]  Am. Compl. ¶¶ 51-57.  Defendants contend that they are entitled to summary judgment on this claim because (1) Cote's ejection from the City Council meeting was legally justified and (2) they are protected by qualified immunity. Defs.' Mem. 16-19.  And although they choose not to argue the point, Defendants note

---

[7] The Court notes that it cannot decipher whether Cote's Amended Complaint alleges a claim for an unconstitutional false arrest in violation of 42 U.S.C. § 1983 or, alternatively, an unlawful false arrest in violation of Rhode Island tort law.  See Am. Compl. ¶¶ 51-57.  But the elements of the two claims are nearly identical.  Henshaw v. Doherty, 881 A.2d 909, 919 (R.I. 2005) (citing Scott v. District of Columbia, 101 F.3d 748, 753 (D.C. Cir. 1996)).  Thus, because Cote gestures at both federal law and state law frameworks in his briefing, and because Defendants argue the issue under state law, the Court assesses Cote's claim under Rhode Island law.  See Pl.'s Resp. 22-23; Defs.' Mem. 16-19.

that "[i]t is undisputed that none of the Defendants in this case subjected [Cote] to a custodial arrest." Defs.' Reply Pl.'s Resp. 13, Dkt. No. 46 (citing PSAUF ¶ 30). Yet this undisputed fact is impossible to overlook because, as both parties agree, Cote's claim hinges on whether "he was detained 'without legal justification.'" Defs.' Mem. 16 (quoting Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996)); see Pl.'s Resp. 22; see also Illas v. Przybyla, 850 A.2d 937, 942 n.4 (R.I. 2004) (citing Beaudoin v. Levesque, 697 A.2d 1065, 1067 (R.I. 1997)). Indeed, Cote himself argues the detention issue and legal justification issue separately. Pl.'s Resp. 22-28.

To determine whether a person was detained, "the central inquiry is whether, 'in view of all the circumstances, a reasonable person would believe that he or she was not free to leave.'" State v. Jimenez, 276 A.3d 1258, 1267 (R.I. 2022) (quoting State v. Diaz, 654 A.2d 1195, 1204 (R.I. 1995)). In ejecting Cote from the City Council meeting, the undisputed facts show that Defendants did not subject him to a detention. Cote argues that he believed he was unable to leave, and thus under arrest, because (1) law enforcement "escort[ed] him out of the meeting over his objection"; (2) he "was reasonably concerned that he would be arrested if he did not leave"; and (3) "dozens of people have [since] asked [him] or his family members about his 'arrest' at the City Council meeting." Pl.'s Resp. 23; see also PSAUF ¶ 30. But the first two arguments

show only that Cote was not free to stay, and not that he was unable to leave.  And the last argument is not relevant to whether he was, in fact, under arrest.

On the undisputed facts, no reasonable person in Cote's shoes would have believed that he was unable to leave, considering that is exactly what he was asked to do.  So Cote was not arrested or otherwise detained, and thus cannot prove "[t]he essential element" of his false arrest claim.  Mailey v. De Pasquale's Estate, 177 A.2d 376, 379 (R.I. 1962).  Accordingly, all Defendants are entitled to summary judgment on Count IV.

## IV.  CONCLUSION

In sum, the Court concludes that:

- For Count I: Travis and the Present Councilmembers are entitled to summary judgment in their personal capacities, but not in their official capacities.  The City and McAllister are not entitled to summary judgment.

- For Count II: Travis and the Present Councilmembers are entitled to summary judgment in their personal capacities, but not in their official capacities.  The City and McAllister are not entitled to summary judgment.

- For Count III: Travis is entitled to summary judgment in her personal capacity, but not in her official capacity.

- For Count IV: All Defendants are entitled to summary judgment. Some final words.  None of the identified material sought by

Cote in his Discovery Motion would have influenced the Court's conclusions, and thus he is not entitled to relief under Federal Rule of Civil Procedure 56(d). Because of the Court's conclusions, all individually named Defendants remain solely in their official capacities — so in the end, this lawsuit reduces to an action between Cote and the City. See Rosaura Bldg. Corp. v. Mun. of Mayaguez, 778 F.3d 55, 62 (1st Cir. 2015) ("A suit against a public official in his official capacity is a suit against the government entity.").

\* \* \*

For all the reasons stated above, the Court DENIES Cote's Discovery Motion, Dkt. No. 42, and GRANTS IN PART and DENIES IN PART Defendants' Motion, Dkt. No. 35.


IT IS SO ORDERED.

_____
William E. Smith
Senior District Judge
Date: July 22, 2025